**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ORIGIN BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:25-cv-395-JDK |
| | § | |
| AMAZING DAYS, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of loans made and funds extended by Plaintiff Origin Bank to Defendants Amazing Days, LLC; Regina Gail, LLC; and Regina Gail White. The Bank alleges that Defendants have defaulted on their obligations and currently owe approximately $900,777. Defendants have answered and filed several counterclaims, alleging that the Bank breached the parties' contracts and committed fraud, among other claims.

Now before the Court is the Bank's motion to dismiss the counterclaims. Docket No. 11. For the reasons stated below, the motion is granted in part and denied in part. Specifically, the Court grants the Bank's motion to dismiss Counts 1, 3, 4, and 5, as well as the request for an equitable accounting. The Bank's motion to dismiss the breach of contract claim in Count 2 is denied.

**I.**

The following statement of facts is from Defendants' answer and counterclaims (Docket No. 11), which the Court assumes is true for purposes of the Bank's motion

1

to dismiss.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

Defendants acquire and develop real property in Bullard, Texas, to be subdivided into lots for sale.  Docket No. 11 ¶¶ 34–35.  For years, Defendants maintained deposit and lending relationships with the Bank at its branch in Tyler, Texas.  *Id.* Defendants claim that, under their agreements with the Bank, "as lots sold, [the Bank], via its agent Matthew Pollard, agreed, represented, and was obligated to apply sale proceeds to the specific loan secured by that property, release the lien on the sold lot, and, once the loan was paid off, allow the [Defendants] to retain remaining profits."  *Id.* ¶ 35.  Instead, Defendants contend, Pollard "engaged in deceptive conduct." *Id.* ¶ 37.  For example, Pollard represented that the lot sale proceeds of the Bullard development "would be applied to pay down the principal of all loans with [the Bank]," but in some instances Pollard did not apply the funds as agreed.  *Id.* ¶¶ 37–44.  Pollard also promised to refinance "the existing Doggett Loan" but did not do so.  *Id.* ¶ 37.  And Pollard "plac[ed] credits into suspense rather than applying them to the correct obligations," "initiat[ed] unauthorized transfers," and "[kept] incomplete and inaccurate records."  *Id.* ¶ 45.

In 2024, Defendants questioned the loan balances.  The Bank's regional president allegedly acknowledged that many transactions were not adequately accounted for.  *Id.* ¶¶ 47–49.  And in July 2024, the Bank admitted that Pollard's conduct "violated bank policy by facilitating advances in and among accounts . . . without properly documenting those transactions."  *Id.* ¶ 52.  The Bank then accelerated its loans with

2

Defendants and demanded payoffs based on distorted and incorrect records. *Id.* ¶ 53. The Bank's conduct allegedly caused Defendants to incur improper fees and interest, foreclosure-related costs, business interruption, and other economic losses. *Id.* ¶ 54.

The Bank filed this lawsuit, alleging that Defendants had breached the loan agreements and defaulted on their obligations. Docket No. 1. Defendants answered and counterclaimed, alleging breach of contract, fraud, negligence, and negligent hiring and supervision. Defendants seek an equitable accounting, damages, and attorneys' fees. Docket No. 11.

## II.

Federal Rule of Civil Procedure 8(a) requires a complaint, including a counterclaim, to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Claims of fraud must also comply with Rule 9(b), which imposes a more stringent pleading standard than Rule 8.  Rule 9(b) states in part that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Under Rule 12(b)(6), a party may move to dismiss a complaint or counterclaim that fails to adequately state a claim.  Such motions are "viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  A claim cannot be dismissed under Rule 12(b)(6) unless the claimant "would not be entitled to relief under any set of facts or any possible theory that [she] could prove consistent with the allegations in the complaint."  *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *see also Twombly*, 550 U.S. at 563 (noting that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").  Finally, in considering a motion to dismiss for failure to state a claim, the Court "must limit itself to the contents of the pleadings."  *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### III.

The Bank moves to dismiss each of the Defendants' causes of action, as well as the request for an equitable accounting.  The Court addresses each claim in turn.

### A.

Count 1 alleges breach of contract.  Defendants claim that "Pollard, on behalf of [the Bank]," agreed to modify and refinance "the Doggett Loan with a new note similar in terms to Loan 5055196." Docket No. 11 ¶ 58.  The Bank allegedly "breached this agreement by failing to refinance under similar terms to Loan 5055196 and not applying payments and proceeds properly." *Id.* ¶ 59.

The elements of a breach of contract claim in Texas are (1) a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant, and (4) damages.  *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).  Here, Defendants fail to allege a valid contract.  They do not identify any written contract, instead suggesting that the agreement was oral.  Docket No. 11 ¶ 58 (alleging that Pollard agreed to the modification "in meetings and phone conversations").  But a loan agreement exceeding $50,000 in value—like the Doggett Loan here—"is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE ANN. § 26.02.  *See also, e.g., Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App. 2009—Dallas, pet. dism'd, w.o.j.) (stating that "the loan agreement itself must be in writing" to be enforceable); *see also 1001 McKinney Ltd. v. Credit Suisse First Bos. Mortg. Cap.*, 192 S.W.3d 20, 26 (Tex. App. 2005—Houston

[14th Dist.] pet. denied) (holding that an oral promise to lend $6.75 million absent a writing signed by the parties was an unenforceable loan agreement).

Although some courts have recognized a "partial performance" exception to the statute of frauds, Defendants have not adequately pleaded that exception here.  *See Conner v. Lavaca Hosp Dist.*, 267 F3d 426 at 436 (citing *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ) (holding that the party's performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract was actually made"); *see also Gaubert*, 286 S.W.3d at 556 (declining to apply the partial performance exception to a claimed oral agreement for a loan).

The claim fails for other reasons, too, including that Defendants' allegations about the oral modification are vague and conclusory.  *See* Docket No. 11 ¶ 58 (alleging that, at "some point in 2023" the Bank agreed to refinance the Doggett Loan "with a new note in similar terms to Loan 5055196").

Count 1 is dismissed.

## B.

Count 2 also alleges breach of contract.  Defendants claim that the Bank breached Loan Number 5055196 by failing to apply their payments "as outlined in the loan agreement."  Docket No. 11 ¶ 63.  Defendants allege that the Bank's breach caused them $292,418.56 in damages.  *Id*. ¶ 64.

The Bank argues that this claim fails because "the referenced loan agreement[] [does] not outline anything about the required application of [payments]."  Docket No. 15 at 6–7.  That may be true, but this is a motion on the pleadings, and the Court is

limited to the allegations in Defendants' counterclaims; the Court declines to review and interpret the evidence at this stage of the proceeding. *See Neitzke v. Williams,* 290 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."); *see also Vine St. LLC v. Keeling,* 362 F. Supp. 2d 754, 760 (E.D. Tex. 2005) ("[I]n a motion to dismiss, the Court does not weigh evidence and only reviews allegations made in the pleadings.").

The Bank also challenges the lack of specifics regarding this claim. In Count 2, Defendants allege that the Bank breached the loan agreement by not applying the payment of $663,668.56 "as outlined in the loan agreement." Docket No. 11 at 14. Although this part of the amended counterclaim lacks detail, elsewhere Defendants allege that, under Loan 5055196, the Bank "was obligated to apply sale proceeds to the specific loan secured by that property, release the lien on the sold lot, and, once the loan was paid off, allow [Defendants] to retain remaining profits." Docket No. 11 ¶ 35. This sufficiently states the substance of the loan agreement that was allegedly breached. Defendants further allege that the Bank breached this obligation by failing to apply the loan proceeds properly and that Defendants were damaged as a result. Docket No. 11 at 14; *see also Pathfinder Oil & Gas,* 574 S.W.3d at 890.

Accordingly, the Court denies the Bank's motion to dismiss Count 2.

## C.

Count 3 alleges fraud. Defendants claim that the Bank "(via Pollard) misrepresented in various meetings and phone calls between 2019 and 2022 that [the Bank]

would refinance the Doggett Loan and apply payments and proceeds from the lot sales accurately." Docket No. 11 ¶ 67. "This turned out to be false as no formal refinance occurred" and "funds from lot sales were diverted to [Defendants'] account then withdrawn by 'MP.'" *Id.* ¶ 68.

This is the kind of conclusory allegation that Rule 9 prohibits. As noted above, Rule 9(b) requires pleading fraud with particularity, which means the complaint must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). "In short, plaintiffs must plead enough facts to illustrate the who, what, when, where, why and how of the alleged fraud." *Id. See also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (fraud allegations must "specify the statements contended to be fraudulent," "state when and where the statements were made, [and] explain why the statements were fraudulent.").

Here, Defendants' allegations about Pollard's alleged misrepresentations lack any detail. They do not state specifically what Pollard said, when or where he said them, and why the statements were fraudulent. Even if Defendants had adequately alleged a fraud claim, moreover, it would likely run afoul of the economic loss rule, which is discussed further below.

Count 3 is dismissed.

8

**D.**

Count 4 alleges negligence and gross negligence.  Defendants claim that the Bank breached its "duty of reasonable care in account oversight/deposit handling" by "failing to monitor Matthew Pollard," "'un-book[ing]' entries with perceived loans that were not made but still being charged as owed," and "mischaracteriz[ing] [] Defendants' own funds in late 2021 as advances."  Docket No. 11 ¶ 73.  Defendants allege that the Bank's negligence caused them $718,086.96 in damages.  *Id.* ¶ 74.

To state a negligence claim under Texas law, a plaintiff must allege that the defendant owed plaintiff a duty, breached the duty, and proximately caused the plaintiff damages.  *E.g., Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001).  In Texas, however, the economic loss rule generally precludes recovery in tort for purely economic damage unaccompanied by injury to persons or property.  *McMillin v. Origin Bank*, No. 6:24-cv-235-JDK, Docket No. 45 at 11 (E.D. Tex. Nov. 26, 2025) (citing *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020)).  When "the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."  *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 815 (Tex. App.—Fort Worth 2006, pet. denied) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).  "Thus, tort damages are generally not recoverable unless the plaintiff suffers an injury that is

9

independent and separate from the economic losses recoverable under a breach of contract claim." *Id.*

Here, the only duty owed by the Bank to Defendants arises out of their banking relationship. This is a contractual duty governed by the parties' loan agreements and cannot support a negligence claim. *See, e.g., McMillin*, No. 6:24-cv-235-JDK, Docket No. 45 at 12; *Tex. Bank & Trust Co. v. Zucker*, 2019 WL 1922044, \*5 (E.D. Tex. April 8, 2019) (explaining that "Texas courts generally hold that no [] duty [apart from a contractual duty] exists in an ordinary lender-borrower relationship") (citing cases). Although a special duty may arise when a bank exercises "excessive lender control over, or influence in, the borrower's business activities," no such duty is alleged here. *See Tex. Bank & Trust Co.*, 2019 WL 1922044, \*5.

Additionally, Texas's economic loss rule precludes Defendants from pursuing a negligence claim on these facts. When "the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 815 (Tex. App.—Fort Worth 2006, pet. denied) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). "Thus, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim." *Id.* Here, Defendants claim that the Bank's conduct caused them to default on their loans and suffer other loan-related damages. Docket No. 11 at 16. These are at most contract-related damages, not damages resulting from an alleged negligent action by the Bank.

10

Count 4 is thus dismissed.

### E.

Count 5 alleges "negligent hiring/negligent supervision/negligent retention." Defendants claim that the Bank "has a duty not to hire employees such as Matthew Pollard," to "train and supervise employees to ensure that conduct like the aforementioned paragraphs does not occur," and to "not retain such employees." Docket No. 11 ¶ 76.

For all the reasons stated above, the economic loss rule bars this claim. *Curtis v. Cerner Corp.*, 621 B.R. 141, 172 (S.D. Tex. 2020) ("The [economic loss] rule is also applicable to negligence and negligence-related claims including negligent hiring."). Further, Texas courts have held that plaintiffs bringing a negligent supervision claim must "establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 576 (5th Cir. 2023) (quoting *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.). And here, Defendants have not pleaded that any Bank employee committed an actionable tort. In their response to the motion to dismiss, Defendants argue that the Bank committed conversion through Pollard by withdrawing funds without authorization. Docket No. 17 at 22. This, however, is a new allegation that cannot be raised in response to a motion to dismiss. *Kirk v. Our Cmty. Our Kids*, 2025 WL 3650756, at *2 (N.D. Tex. Dec. 17, 2025) (holding that "the Court cannot consider the new factual allegations that [plaintiff] has raised in her response

11

to the motion to dismiss) (citing *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008)).  Even if the Court were to consider this new allegation, moreover, it is conclusory and vague and fails to support Count 5.

Count 5 is dismissed.

## F.

Finally, Defendants demand "an equitable accounting" because of "the confusion, complexity, and concealment of the fraudulent transactions."  Docket No. 11 ¶ 79.  Defendants, however, fail to allege any right to an equitable accounting—either in the parties' loan agreements or as a matter of law.  *See, e.g., T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding that plaintiff was not entitled to an equitable accounting absent an express contractual provision requiring accounting and because no fiduciary relationship existed between the parties); *Buckhead Inv. Partners, Inc. v. Brompton Cmty. Hous. Dev. Corp.*, 2024 WL 5249163, at *13 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024, pet. denied) (concluding that the trial court did not abuse its discretion in denying the request for an accounting where the parties' contract was silent on the matter and where the appellants did not demonstrate that a fiduciary relationship existed between the parties).

This request for relief is dismissed.

## IV.

For the reasons stated above, the Court **GRANTS** the Bank's motion to dismiss (Docket No. 15) Counts 1, 3, 4, and 5, as well as the request for an equitable

12

accounting.  The dismissal is without prejudice.  The Court **DENIES** the Bank's motion to dismiss Count 2.

Within 21 days of the date of this Order, Defendants may file an amended counterclaim repleading only the claims that are dismissed herein as necessary to comply with the Federal Rules of Civil Procedure and the governing law.

Finally, the Bank's first motion to dismiss (Docket No. 10) is **DENIED** as moot.

So **ORDERED** and **SIGNED** this **6th**  day of  **July, 2026.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

13